| JOSEPH BIGICA, | Civil Action No. 14-1649 (MCA) |
|---|---|
| Petitioner, | |
| v. | OPINION |
| UNITED STATES OF AMERICA, | |
| Respondent. | |

**ARLEO, United States District Judge:**

## I.  INTRODUCTION

This matter has been opened to the Court by Petitioner Joseph Bigica's filing of a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255.  Pursuant to Fed. R. Civ. P. 78, upon review of all submissions, this matter is decided without oral argument, and for the reasons stated below, the Court will dismiss the motion and deny a certificate of appealability.

## II.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On May 9, 2012, Petitioner pled guilty to a two-count Information charging him with corruptly interfering with the due administration of the internal revenue laws, in violation of 26 U.S.C. § 7212(a), and conspiring to violate the Federal Election Campaign Act through the use of straw contributors to a federal election campaign, in violation of 18 U.S.C. § 371. Those charges were the result of two things: first, Petitioner's failure to pay any of the approximately $1,488,020 in federal taxes he owed for 1999 through 2006, despite his having earned

1

$5,801,888 in gross income during that time, and, second, his contribution from 2006 to 2009 through straw donors of $98,600 to various federal election campaigns.

In Petitioner's plea agreement, the parties noted their positions on certain issues related to the calculations necessary under the United States Sentencing Guidelines ("U.S.S.G."). In particular, they stipulated to a total offense level of 22 for his tax offense and to a total offense level of 22 for his illegal campaign contribution offense. The government did not believe that the counts should be grouped for sentencing purposes, but Petitioner reserved the right to argue that they should be grouped. The parties also stipulated that Petitioner had demonstrated acceptance of responsibility and he thus qualified for a 3–level reduction in his offense level calculation.

The United States Probation Office prepared a presentence investigation report ("PSR") which accepted Petitioner's offense level for the tax evasion count as 22 and his offense level for the illegal campaign contributions count as 22. It added a 2–level enhancement because the counts were not grouped, but it "marginally afforded" Petitioner a 3–level offense-level reduction for acceptance of responsibility. (PSR ¶ 80.) That resulted in an adjusted offense level of 21. With Petitioner's Criminal History Category of I, the PSR provided his final Guidelines range as 37 to 46 month's imprisonment.

In his written response, Petitioner did not question the calculation, but did object to the analysis of his financial ability to pay restitution. Specifically, the PSR explained that

> [w]hile the defendant unquestionably suffers from various financial shortcomings, we submit he has not proven an inability to pay a fine. Bigica failed to submit complete financial statements, and the documentation and information that was otherwise submitted is, in parts, contradictory if not altogether absent. The defendant continues to flagrantly disregard his legal responsibilities and clearly lives way above his financial means, even in light of the instant criminal prosecution and inherent sanctions the Court may impose. While a cursory review of the financial statement submitted by the defendant in August 2012 would make him appear nearly destitute, any assets are directly attributable to the defendant's income as Mrs. Bigica

2

is not employed outside the home. The expenditures and liabilities proffered by the defendant consist largely of unnecessary living expenses, those which exceed the income Bigica reports, or are debts resulting from the defendant's criminal conduct.

(*Id.* ¶ 232.) The PSR summarized Petitioner's objection, stating that he contended he made a "good faith effort" to provide the requested documentation, but explained that his financial situation was "complex." (*Id.* at 63.) Petitioner also claimed that he failed to provide complete financial statements because he was "somewhat disorganized" with respect to his financial documentation. (*Id.*) He also claimed that he was attempting to pay "pre-existing financial responsibilities," which apparently prevented him from beginning to pay his back-taxes. (*Id.*) The day before sentencing, the District Court ordered Petitioner to submit his 2011 tax return and other required financial information to the Probation Office. He complied with that order.

At sentencing, Petitioner argued that his two counts should have been grouped pursuant to U.S.S.G. § 3D1.2(d), which would have resulted in an offense level of 22 before any acceptance of responsibility reduction was granted. The District Court disagreed and concluded that the two counts should not be grouped because they involved different harms and were not of the same general type of conduct. Thus, at the stage of analysis before the "acceptance of responsibility" issue was addressed, the Court adopted an adjusted offense level of 24.[1]

After hearing arguments, the sentencing court denied Petitioner the three-point reduction for "acceptance of responsibility." The court observed that it has "serious questions about it in this case" and that "[i]n 13 years on the bench I have never denied acceptance of responsibility," but "[i]n this case I'm inclined to." (ECF No. 12-2, Answer to Motion, Exhibit B ("Sentencing

---

[1] The preceding factual and procedural summary was adopted and incorporated from the Opinion on Petitioner's direct appeal. *See United States v. Bigica*, 543 F. App'x 239, 240–42 (3d Cir. 2013).

3

Transcript") 19:10-11; 12-13.)  In reaching its decision, the sentencing court observed that in the time since Petitioner's plea, he had not paid any of the restitution owed to the IRS while continuing to live an extravagant lifestyle and that Petitioner had not been forthcoming with the Probation Office's requests for financial documentation. The sentencing court calculated Petitioner's Guidelines range as 51 to 63 months, and, after considering the factors set forth in 18 U.S.C. § 3553(a), sentenced Petitioner to 60 months' imprisonment.[2]

Petitioner filed a timely notice of appeal on December 19, 2012. On appeal, Petitioner argued that the sentencing court erred by failing to group his two offenses for sentencing purposes and by not holding an evidentiary hearing pursuant to Federal Rule of Criminal Procedure 32 regarding his objection to the PSR's analysis of his financial status and statements that Petitioner had not been fully compliant with the Probation Office's requests. The Court of Appeals for the Third Circuit rejected Petitioner's arguments and affirmed the sentence. *United States v. Bigica*, 543 F. App'x 239, 242-44 (3d Cir. 2013). On March 13, 2014, Petitioner filed the present and timely motion pursuant to Section 2255. On March 19, 2014, this Court issued an order directing the Clerk of the Court to terminate the Petition and to send Petitioner a blank Section 2255 form, which Petitioner was to complete and submit within 30 days of the date of the order. Petitioner filed an amended motion on July 16, 2014. The Government filed its Response on October 14, 2014.

III.  **ANALYSIS**

Title 28, United States Code, Section 2255 permits a court to vacate, correct, or set aside a sentence

---

[2] The sentencing court entered an Opinion further detailing its findings and conclusions regarding Petitioner's sentence after the hearing. *See U.S. v. Bigica*, No. 12-cr-318, slip op. (D.N.J. Jan. 10, 2013).

4

upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. . . .

28 U.S.C. § 2255.

A criminal defendant bears the burden of establishing his entitlement to § 2255 relief. *See United States v. Davies*, 394 F.3d 182, 189 (3d Cir. 2005). Moreover, as a § 2255 motion to vacate is a collateral attack on a sentence, a criminal defendant "must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Travillion*, 759 F.3d 281, 288 (3d Cir. 2014) (citing *United States v. Frady*, 456 U.S. 152, 166 (1982)). In considering a motion to vacate a defendant's sentence, "the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." *United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005) (internal quotation marks and citation omitted). "It is the policy of the courts to give a liberal construction to *pro se* habeas petitions." *Rainey v. Varner*, 603 F.3d 189, 198 (3d Cir. 2010). The Court may dismiss the motion without holding an evidentiary hearing if the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. *See* 28 U.S.C. § 2255(b); *Liu v. United States*, No. 11–4646, 2013 WL 4538293, at *9 (D.N.J. Aug. 26, 2013) (citing *Booth*, 432 F.3d at 545–46).

Petitioner identifies the sole ground for relief in his motion as follows:

TRIAL COUNSEL RENDERED CONSTITUTIONAL INEFFECTIVE ASSISTANCE OF COUNSEL BY FAILING TO MOVE THE TRIAL COURT TO ADHERE TO FED.R.CRIM.P. 32 BY DEFINITIVELY RESOLVING THE PERTINENT OBJECTIONS TO THE PRE-SENTENCE INVESTIGATION REPORT, AND BY NOT ADEQUATELY CONTESTING THE TRIAL COURT'S RULING THAT PETITIONER WAS NOT ENTITLED TO "ACCEPTANCE OF RESPONSIBILITY" BY USING THE CONSIDERABLE EVIDENCE THAT WAS PROVIDED TO HIM TO DEMONSTRATE THAT PETITIONER WAS DESERVING OF THE THREE-POINT SENTENCING GUIDELINE REDUCTION.

(ECF No. 4-1, Amended Motion Pt. 2 ("Mot. Br.") at 10.) Though Petitioner enumerates only this single ground for relief, he later asserts that his appellate counsel "was also grossly ineffective" by failing to raise this Rule 32 argument on appeal, "while instead making the obviously erroneous argument that Rule 32 required the sentencing judge to hold an evidentiary hearing separate from the sentencing hearing to resolve the controverted PSR issues of 'fact.'" (*Id.*) Petitioner further states that appellate counsel was ineffective for failing to challenge the sentencing court's refusal to grant Petitioner the three-point reduction for acceptance of responsibility that was agreed to in his plea agreement. (*Id.*) The Court therefore construes Plaintiff to challenge (1) his trial counsel's performance in connection with Petitioner's sentencing, and (2) his appellate counsel's performance in pursuing his direct appeal. The Court addresses his claims in order as separate grounds for relief.

The Sixth Amendment guarantees the accused the "right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984). A federal prisoner's claim for ineffective assistance of counsel is properly raised for the first time in federal district court as a § 2255 motion rather than on direct appeal. *See United States v. Garth*, 188 F.3d 99, 107 n. 11 (3d Cir. 1999); *United States v. Cocivera*, 104 F.3d 566, 570 (3d Cir. 1996). The clearly established Supreme Court precedent governing ineffective assistance of counsel claims in the sentencing context is the two-pronged standard enunciated in *Strickland*. Under the first *Strickland* prong, a movant must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at

688. Under the second *Strickland* prong, a movant must demonstrate a reasonable probability that, but for counsel's error, the result of the sentencing hearing would have been different. *Id.* at 694. In order to sustain an ineffective assistance of counsel claim, the movant must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259–260 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891–92 (3d Cir. 1987). The *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689. Furthermore, "[b]ecause failure to satisfy either prong defeats an ineffective assistance claim, and because it is preferable to avoid passing judgment on counsel's performance when possible, [*Strickland*, 466 U.S. at 697-98]," courts should address the prejudice prong first where it is dispositive of a petitioner's claims. *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002).

### A. Trial Counsel's Representation in Connection with Petitioner's Sentencing

Petitioner alleges that his trial counsel rendered ineffective assistance by failing to compel the sentencing court to resolve certain factual disputes contained in the final PSR in accordance with Federal Rule of Criminal Procedure 32. Petitioner further argues that trial counsel's efforts to secure a three-point reduction for acceptance of responsibility were constitutionally ineffective. As discussed below, even if trial counsel's representation could be deemed objectively unreasonable (which it was not), Petitioner cannot demonstrate that but for the alleged errors, the result of his sentencing hearing would have been different. These contentions therefore are without merit.

### 1. Petitioner's Rule 32 Claims

Petitioner first challenges counsel's representation with respect to certain disputed facts contained in the final PSR. According to Petitioner, trial counsel should have moved the

sentencing court to resolve these disputes as required by Federal Rule of Criminal Procedure 32, which provides:

> At sentencing, the court . . . must—for any disputed portion of the presentence report or other controverted matter—rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing.

Fed. R. Crim. P. 32(i)(3). Contrary to Petitioner's assertions, however, the record – as well as the ruling by the Court of Appeals for the Third Circuit – demonstrates that the sentencing court did comply with Rule 32 either by resolving the pertinent disputes or stating that resolution was unnecessary for purposes of determining Petitioner's sentence. In any event, Petitioner has not made concrete and substantiated allegations showing how any further discussion or resolution of these matters would have altered the outcome of his sentencing hearing and therefore has failed to satisfy *Strickland's* prejudice prong.

Petitioner alleges that trial counsel should have compelled the sentencing court to resolve seven disputed facts reported in the PSR: (1) that Petitioner was involved in illegal local campaign contributions "totaling at least $250,000" (PSR ¶ 218); (2) that Petitioner "made multiple jewelry purchases in the amount of $70,725" between 2006 and 2010 (PSR ¶ 225); (3) that the Probation Officer was unable to find an active sale listing for Petitioner's house, which Petitioner had reported as being listed for sale (PSR ¶ 181); (4) that Petitioner had not been fully compliant with the Probation Office's requests for financial information necessary to prepare the PSR (PSR ¶ 232); (5) that Petitioner owned or was associated with certain real estate (PSR ¶ 121); (6) that Petitioner was associated with multiple social security numbers (PSR at 2); and (7) that Petitioner was associated with certain "aliases" (*id.*). As discussed below, the sentencing court resolved the majority of these issues and did not rely on any of them for the purposes of

determining Petitioner's sentence. Petitioner's claim of ineffective assistance therefore cannot succeed.

    a.   Local Campaign Contributions

Petitioner states that, even after his written objection pointing out the inaccuracy, the final PSR included a statement that Petitioner had made "at least $250,000" in illegal local campaign contributions. (Mot. Br. at 22.) Petitioner's counsel did in fact raise a written objection to this allegation in his letter to the Probation Office, stating:

> I again object to your statement that "Bigica was engaged in a similar political contribution scheme on a local government level, between 1998 and 2011, which resulted in payment totaling at least $250,000.00." This allegation and conclusion is not contained in the information my client pled to, nor have any reports, documentation, statements, etc., been provided by either you or any other agency in support of his claim. This paragraph should be deleted in its entirety.

(ECF No. 4-2, Amended Motion, Exhibit A at 4.) Trial counsel also raised the issue at the sentencing hearing and, as at least partially acknowledged by Petitioner (Mot. Br. at 22), the sentencing court made a correction to the paragraph in question:

> MR. FLOOD: It's the paragraph, Judge, where they – there's an allegation that he made political contributions, local government level, between 1998 and 2011, resulting in a total – in a payment totaling at least 250,000.
>
> . . . .
>
> THE COURT: Yes. I see, right. Paragraph 218 further states that information developed by the Government in their investigation of this offense reveals that Mr. Bigica was engaged in a similar political contribution scheme on a local government level between 1998 and 2011, which resulted in payments totaling at least $250,000.
> And what of that is not factually accurate?
>
> MR. FLOOD: I believe the total payment that's listed of at least $250,000 is incorrect, Your Honor.
>
> THE COURT: And what should the number be?

MR. FLOOD: I think that the Government would be in a better position to indicate. I think they've indicated to me that the number is less than that, and that this number includes the $98,000 that's the subject of the contributions that were made that are alleged in the Information.

MR. QURAISHI: Your Honor, I agree with Mr. Flood.
We talked after the final PSR came out. The $250,000 number includes what could be legitimate contributions by the defendant. I don't have a hard number, but I agreed with Mr. Flood that the $250,000 number for that, the local contributions, is inflated, that the actual amount of illegal contributions to local government or state government officials is less than that amount.

THE COURT: So why – would it be accurate to say, to change the language of paragraph 218 to say – to change that number to say, which resulted in substantial payments of an unspecified amount?

MR. QURASHI: I think – I think that's accurate.

MR. FLOOD: That would be fair, Judge.

THE COURT: Okay. I'm going to order that change to be made.

(Sentencing Transcript 4:10—5:23.) Thus, trial counsel advanced this issue both in written objections to the PSR and before the sentencing court and the sentencing court addressed and corrected the alleged inaccuracy. Petitioner states that this issue "was only resolved to some degree" at the sentencing hearing (Mot. Br. at 22), but does not state what further resolution was necessary or how trial counsel's alleged failure to do more, whatever that may have been, prejudiced Petitioner with respect to his sentencing.[3] Petitioner therefore has not demonstrated that counsel's representation was constitutionally ineffective regarding this issue.

  b.  Jewelry transactions totaling $70,725

Petitioner next highlights the contention in Paragraph 225 of the PSR that Petitioner "made multiple jewelry purchases in a total amount of $70,725" between April 2006 and

---

[3] As discussed in greater detail below, the issues Petitioner raises in his Motion were not relied upon in the sentencing court's determination of Petitioner's sentence.

October 2010. Paragraph 225 also includes Petitioner's objection to that allegation—which was raised by defense counsel in his letter[4]—in which Petitioner denies making these jewelry purchases. Petitioner claims that that the transactions were not purchases of new jewelry, but that he instead "pawned some of his wife's jewelry" to a jeweler "from whom he had borrowed $50,000 and to whom [Petitioner] paid $70,725 'in interest on the loan.'" (PSR ¶ 225.) In addition to the written objection, trial counsel also raised this issue at Petitioner's sentencing and discussed it with the sentencing court. *See* Sentencing Transcript 6:4—9:14.

Petitioner alleges that "[t]his factual dispute was never actually resolved because the sentencing judge chose not to determine" whether the transaction in question was related to a loan, as Petitioner asserted, or involved jewelry purchases. (Mot. Br. at 23.) Petitioner does acknowledge, however, that the sentencing court concluded that "it's not necessary to the sentencing proceeding to determine the distinction between what was in fact interest and what was somehow a jewelry transaction."[5] (Mot. Br. at 24; Sentencing Transcript 9:12-14.) The sentencing court's conclusion was enough to satisfy Rule 32, which requires a sentencing court to *either* rule on disputed facts contained in the PSR "*or* determine that a ruling is unnecessary." Fed. R. Crim. P. 32(i)(3) (emphasis added). Because the sentencing court did comply with the Rule, trial counsel's representation can hardly be called unreasonable for not compelling the court to do so. Moreover, Petitioner has again failed to allege or substantiate how resolution of this fact, in his favor or otherwise, would have altered the outcome of the sentencing proceeding and therefore has not met his burden under *Strickland*.

---

[4] See ECF No. 4-2, at 4.
[5] The sentencing court did, however, amend the paragraph to instead state "multiple jewelry transactions." Sentencing Transcript 8:18-23. Petitioner's counsel approved the amendment.

c. Listing of Petitioner's House for Sale

Petitioner argues that a "much more serious and damaging assertion in the PSR was the investigator's conclusion that the residential property in which petitioner and his family lived was not on the market to be sold." (Mot. Br. at 24.) Petitioner asserts that this fact is particularly important because his defense regarding his failure to make restitution payments to the IRS after his guilty plea centered on his plan to sell the family home, thus reducing his monthly overhead, and to use the sale proceeds to pay a portion of his IRS debt. (*Id.*) This explanation, Petitioner argues, "would be nothing more than a sham" if the residence were not in fact being offered for sale, as implied by the PSR. (*Id.* at 25.) Petitioner argues that "[t]here would seem to be no reason or excuse for the trial attorney not to have insisted that the sentencing judge comply with Rule 32 and make a determination about this issue." However, trial counsel did address the status of Petitioner's residence and, importantly, the sentencing court did make a determination of the issue.

In the PSR, the investigator stated, "The undersigned was unable to find an active listing [for Petitioner's residence] in the New Jersey Multiple Listing Service (NJMLS) using the information available." (PSR ¶ 181.) In response to this statement, trial counsel lodged a written objection, stating:

> In this paragraph you state you were unable to find an active listing in the New Jersey Multiple Listing Service. This property is listed on the New Jersey Multiple Listing Service <u>under the exclusive sections</u>. Said property is listed with A I Preferred Realty Associates, Inc.

(ECF No. 4-2, at 4 (emphasis in original).) This objection is reflected in Paragraph 181 of the final PSR. Though Petitioner states that trial counsel "did not even mention [this disputed issue] as one of his challenges to the PSR when he was given the opportunity to do so," (Mot. Br. at 25), counsel did address the sale of Petitioner's residence with the sentencing court—

specifically, in response to the sentencing court's questions regarding Petitioner's acceptance of responsibility and failure to make restitution payments after his plea. *See, e.g.*, Sentencing Transcript 22:21-22 ("What he's done, Judge, I mean his house is listed for sale."); 23:12-15 ("This – this house, it's listed for sale. Once that is sold, Judge, there will be, just the –what it's costing I think it's around $23,000 a month is what it costs, you know, to pay."). 52:7-12; 84:23—85:11.

The record further demonstrates that the sentencing court accepted Petitioner's assertions that the house was in fact for sale, though that fact did not sway its decision regarding Petitioner's sentence. During the colloquy at the hearing, the sentencing court inquired as to the status of Petitioner's house:

> THE COURT: What's the current status of the house sale situation?
>
> MR. FLOOD: It's been listed since 2003. There have been no offers. There's – there's another house on the street that recently sold, that's my understanding, for approximately 3.5 million dollars.
> . . . .
> And which, you know, is a very positive thing in terms of that, once he gets this house sold. So it's listed at about three million five, is what the papers were that I have.
>
> THE DEFENDANT: Three million six.
>
> THE COURT: Three million six. I was off by $100,000. Three million six.
>
> MR. FLOOD: That's correct, Judge.
>
> THE COURT: So that's the listing price. And based on another sale of a property on the street, that's what you're saying is essentially, that's a realistic hope to get for that house?
> . . . .
> It has some value?
>
> MR. FLOOD: Yes.
>
> THE COURT: Good.

Sentencing Transcript 24:25—26:1. The sentencing court again acknowledged its acceptance of

Petitioner's contention that the house was listed for sale later in the hearing:

> THE COURT: I thought you said he's been trying to sell it since 2004.
>
> THE DEFENDANT: It was listed in 2000 and relisted again after – before my plea agreement.
>
> THE COURT: *So the house is listed for sale. Yes.*

*Id.* at 85:2-6 (emphasis added). Thus, as is the case with the issues already discussed, the

sentencing court complied with the mandates of Rule 32 by resolving the purported dispute

regarding the sale of Petitioner's home – and in fact resolved the dispute in his favor. Petitioner

therefore has no basis on which to allege that trial counsel's representation was unreasonable or

inadequate on this point.

In addition, though Petitioner forwards a somewhat more substantial prejudice argument

on this issue than he does on the others, the argument is without merit. Petitioner argues that the

implication that his house was not in fact listed for sale undercut his explanation for why he did

not pay restitution after entering his guilty plea. But the sentencing court rejected this

explanation despite accepting Petitioner's contention that the house was in fact listed for sale. In

its Sentencing Opinion, the sentencing court observed:

> While Defendant's attorney indicated at sentencing that Defendant's house is listed for sale and that this shows an acceptance of responsibility, "his" house has been on the market since 2003. Moreover, Defendant continues to deny that this house is even his asset, and thus when it is put up for sale is of no moment for purposes of acceptance of responsibility. Essentially, counsel argued that the defendant's continued diversion of assets to his wife to pay for the luxury homes that he contends is "her house" will stop once it is sold. This is a most unpersuasive argument.

*U.S. v. Bigica*, No. 12-cr-318, slip op. at 14, n.11 (D.N.J. Jan. 10, 2013). As discussed below, the

sentencing court made a clear and explicit record regarding its decision not to grant Petitioner a

three-point reduction for acceptance of responsibility—specifically with respect to Petitioner's failure to pay restitution between his plea and sentencing—and Petitioner's listing the house for sale was not a substantive or relevant fact in the court's consideration. Moreover, because the sentencing court resolved this alleged dispute in Petitioner's favor, Petitioner cannot demonstrate that his counsel's representation on this point prejudiced him and therefore has not satisfied the requirements of *Strickland*.

### d. Petitioner's Compliance with Probation

Petitioner asserts that "there were a number of charges and countercharges that revolved around the subject of petitioner having complied with or failed to honor requests from the Probation Department for financial data, bank statements, or other documents that would provide a relevant history of his financial status." (Mot. Br. at 27.) According to Petitioner, even though the final PSR and sentencing transcript "are riddled with divergent facts and differences of opinion about petitioner's compliance in this regard . . . there are no instances where the sentencing judge issued a finding to explicitly and definitively establish a Rule 32 record in this regard." (*Id.*) This contention is wholly inaccurate.

The record contains numerous declarations from the sentencing court regarding its conclusion that Petitioner was not in fact compliant with the Probation Office in its efforts to prepare the PSR, including but not limited to the following:

> THE COURT: But besides the house, we're talking, -- put the house to one side. The tax return shows, I mean we could dig it out of the papers I just received yesterday afternoon. The probation department has been asking for it for a very long time. I had to enter a court order to get it.

Sentencing Transcript 26:5-10.

> [THE COURT:] My biggest concerns, as I've read this presentence report, which was available to everyone else to read as well, is the picture coming through loud and clear that what was given by Mr. Bigica, not by you, not

15

by the accountant, there was one, there was even a forensic accountant, but by himself to the probation department, was not complete, it was not accurate, and it was not honest, which is the key component. That's what has me most concerned about this

. . .

He, in paragraph – one of these paragraphs, and I can get to it. He claims a net worth of $13,000. This is a man who's making between 800 and $900,000 a year. Claiming a net worth of $13,000.

*Id.* 28:1-13.

THE COURT: So what he's done, and the reason I'm so concerned about this, as he – he has stripped himself, in the portrait he's given to probation, of every asset he could think of to strip himself of. But he's included the expenses attributable to those assets on the expense side of the ledger, in order to make himself look financially impecunious when he's not.

*Id.* 30:8-15.

[THE COURT:] It is the concern I have about all the paragraphs in this exceptionally long final presentence report, where the probation officer extends extraordinary graciousness to him to give him two tries to submit honest financials, and instead looks like the pre-plea type of conduct, admittedly in a different context, because it's by then post plea, but the hiding is continuing. That's the picture that emerges from the final presentence report. And from the – the papers that he gave them are not full, complete and accurate. And it happened so many times that the same pattern of deceptive paperwork is done with respect to the probation office as was done and outlined by Mr. Qurashi over and over again with respect to other things.

*Id.* 81:6-19.

[THE COURT:] Because the financial statements and information provided by the defendant to his probation officer were so incomplete, the probation department gave him a second chance. They told the defendant to provide a complete second set of financial statements in their entirety. The second set was also not complete. In multiple instances it would include a cover page but none of the remainder of the document. While that could be understood for an isolated document, when it happens over and over again, it's an attempt at obfuscation or a failure to recognize the kind of conduct that got one in trouble in the first place.

*Id.* 92:13-23. And finally:

16

> This Court has not had another defendant in over a dozen years on the bench who has shown this level of continued financial evasion in his representations to the United States Probation Department. Defendant was untruthful, cavalier and evasive to the United States Probation Office regarding his financial status and his ability to pay restitution.

*Bigica*, No. 12-cr-318, at 14. The sentencing court could not have been more explicit in its findings that Petitioner's compliance with the requests of the Probation Office was lacking. That being the case, trial counsel could not have afforded unreasonable or deficient representation in not attempting to compel the sentencing court to "issue[] a finding to explicitly and definitively establish a Rule 32 record in this regard" (Mot. Br. at 27) because that did in fact occur. And because an attempt to compel the court to make findings that it clearly had made would have been futile and moot, Petitioner could not have been prejudiced by his counsel's declining to undertake such an effort.[6]

### e.  Petitioner's Association with Certain Real Estate and Personal Identifiers

Finally, Petitioner alleges that the final PSR included additional statements to which he (through counsel) objected and upon which the sentencing court did not rule. First, Petitioner alleges that the PSR stated that "petitioner had employed three different social security numbers ("SSN")," which Petitioner argues is "a highly inflammatory accusation that if it were true, would be indicia of yet another serious federal offense." (Mot. Br. at 17.) Second, Petitioner

---

[6] Notably, Petitioner does not contest many of the factual conclusions that the sentencing court reached regarding his compliance with Probation. He does not dispute, for example, that he did not provide his 2011 tax return to Probation as requested and instead submitted it only after the sentencing court ordered him to do so the day before the sentencing hearing. Nor does he deny that certain financial documents provided to Probation were initially, and even after a second request, incomplete. Petitioner therefore cannot show that if his counsel had insisted on a more "explicitly and definitively" established Rule 32 record on this issue, the sentencing court would have reached different conclusions and findings or that the outcome of his sentencing proceedings would have been different.

argues that the investigator alleged "that petitioner was also using multiple 'aliases.'"[7] (Mot. Br. at 21.) Third, Petitioner states that "[t]he PSR also contained numerous references to real estate that purportedly belonged to [Petitioner], but . . . that he had absolutely no ownership connection to any of those properties." (Mot. Br. at 7-8.) Petitioner's trial counsel lodged written objections and clarifications to each of these statements, which were included in the final PSR, and the Probation Office explained that the reported information was associated with Petitioner in public records.[8]

Petitioner's arguments that trial counsel rendered constitutionally ineffective assistance on these matters are unavailing. Counsel made appropriate objections and clarifications on these points which were included in the final PSR. It was not unreasonable for counsel to decide not to raise again at sentencing matters that Petitioner calls "hardly momentous" (aliases issue) (Mot. Br. at 21) or that were "seemingly corrected for the most part in the revised PSR" (additional properties). (*Id.* at 8.) This is especially true given the sentencing court's clear focus on

---

[7] Specifically, in the "Identifying Data" section of the PSR, "Aliases/Other" lists the following: "Jose Bigica; Joseph J. Bigica; Joseph Bajica; Joseph Bijica; Joseph B. Bigica; Joseph Biea." (PSR at 2.)

[8] With respect to the list of social security numbers, counsel explained that the first listed number was Petitioner's social security number, the second was Petitioner's wife's social security number, and that Petitioner never used the third. *See* ECF No. 4-2, at 1. The Probation investigator responded by stating that the "probation office merely reports [the third] number as being associated with the defendant, as confirmed by public records." (PSR at 2, n.1.) With respect to the list of aliases, trial counsel's objection stated that Petitioner never used any them. *See* ECF No. 4-2, at 1. In response, the Probation Office stated, "The names listed on page two simply reflect those associated with the defendant in various public records and appear to be variations/misspellings of the defendant's name." (PSR at 61.) Finally, regarding the additional properties "associated" with Petitioner (PSR ¶ 121), trial counsel stated that Petitioner never owned or was associated with most of the properties. *See* ECF No. 4-2, at 2. While these objections concerning the additional properties were included in the final PSR, the Probation Office did not respond to them.

Petitioner's acceptance of responsibility and not on the "disputed" issues Petitioner raises in his

Motion, as evidenced by the sentencing transcript:

> [THE COURT:] I have serious questions about [acceptance of responsibility] in this case. Very serious questions. In 13 years on the bench I have never denied acceptance of responsibility. In this case I'm inclined to, but I want to give you every opportunity to prove to me and meet your burden that [Petitioner is] entitled to them. It's – so I want to give you every opportunity to do that.

Sentencing Transcript 19:10-16. Indeed, the sentencing court devoted a substantial amount of

time on this issue at the hearing. In contrast, the sentencing court did not rely or base its

sentencing decision on social security numbers, "aliases," or properties associated with Petitioner

and trial counsel did not act unreasonably in not dwelling on these points at the hearing.

For the same reason, Petitioner cannot and has not established that he was prejudiced

because trial counsel did not attempt to compel resolution of these matters. Petitioner makes the

conclusory argument that "these incorrect facts and assertions went to the heart of [Petitioner's]

character and the consideration of mitigation by the court in regard to the terms of his sentence."

(Mot. Br. at 5.) He offers no evidence or support for this allegation, however. In fact, the sentencing

court stated on the record that Petitioner's post-plea conduct and mindset, rather than his ownership

of specific assets, jewelry, or other matters, was the court's primary concern and basis for its

sentencing decision:

> [THE COURT:] . . . for me this is unprecedented. And it is a reaction to reading the presentence report *of his post plea conduct alone*. It's very important for me to separate out the pre-plea conduct, which is wrapped up in the offense conduct and his plea agreement to that offense conduct, which involved concealment of assets.

Sentencing Transcript 80:16-22 (emphasis added).

> [THE COURT:] It's really about respect for the law and not a specific asset. . . . It's not any specific piece of jewelry or any specific car or anything else. It's the mindset hasn't been learned from *post plea*.

*Id.* 92:2-3; 10-12 (emphasis added). In sum, the factual discrepancies Petitioner raises—the listing of the family residence for sale, the jewelry pawning transaction, association with certain other properties, etc.—involve pre-plea conduct and specified assets that were not of particular concern to the sentencing court. In addition, as discussed above, any disputes regarding Petitioner's compliance with Probation—or lack thereof—were definitively resolved by the sentencing court.[9] Petitioner has not shown that had his counsel pressed for Rule 32 rulings on these matters, his sentence would have been different. Petitioner has therefore failed to satisfy the requirements of *Strickland* and his Rule 32 claims will be denied.

## 2. Petitioner's "Acceptance of Responsibility" Claim

Petitioner next argues that "trial counsel rendered constitutional ineffective assistance of counsel . . . by not adequately contesting the trial court's ruling that Petitioner was not entitled to 'acceptance of responsibility' by using the considerable evidence that was provided to him to demonstrate that Petitioner was deserving of the three-point sentencing guideline reduction." (Mot. Br. at 10.) Specifically, Petitioner alleges that counsel did not make sufficient arguments that (1) Petitioner made an "offer and compromise" with the IRS prior to his criminal action, (2) Petitioner made payments to the IRS until the time of the criminal investigation, (3) Petitioner pled guilty to an Information, (4) the government agreed that Petitioner was entitled to a

---

[9] Notably, on Petitioner's direct appeal, the Court of Appeals found that the sentencing court complied with the requirements of Rule 32, stating:

> The Court thus considered [Petitioner's] contested facts and decided not to draw the inferences he wished from those facts. Simply put, [Petitioner] characterized the facts in the PSR differently, and the Court, after giving time for argument, found [Petitioner's] characterization unworthy of credence. There was no error in the sentencing procedure.

*United States v. Bigica*, 543 F. App'x 239, 244 (3d Cir. 2013).

reduction based on acceptance of responsibility, (5) the final PSR concluded that Petitioner should be afforded the reduction, and (6) Petitioner submitted evidence of his good character and remorse for his actions. (Mot. Br. at 29-30.) Petitioner's arguments are without merit.

First, Petitioner's counsel engaged in substantial and thorough colloquy with the sentencing court on the issue of acceptance of responsibility. Counsel did, in fact, argue that Petitioner sought negotiations with the U.S. Attorney's Office for a plea agreement before there were plans to present this matter to a grand jury "because [Petitioner] he knew that what he had done was unacceptable and it was wrong." Sentencing Transcript 20:18-23. Counsel further argued that there were "several times" where Petitioner was "in tears for being so ashamed of what he ha[d] done" and that Petitioner stated that what he did was wrong and that he accepted responsibility.[10] *Id.* 21:4-6; 10-11. As discussed above, counsel also forwarded Petitioner's argument regarding the attempted sale of his family residence as a means to satisfy his obligations to the IRS. *Id.* 23:12-15; 24:21-24. In addition, counsel attempted to account for Petitioner's failure to pay restitution after his plea by explaining that Petitioner had "substantial bills" relating to experts and accountants. *Id.* 26:14-18. Counsel also argued that Petitioner began psychoanalysis and counseling. *Id.* 32:19-25. The sentencing court acknowledged counsel's efforts, stating that counsel had "done an excellent job with the material at [his] disposal, to talk

---

[10] Petitioner makes much of his written statement, quoted in the PSR, in which he admitted his criminal conduct and accepted responsibility for it. (Mot. Br. at 31-32.) He argues that counsel should have contested the PSR's assertion that Petitioner's acceptance of responsibility was "marginal" based on his "limited statements." (*Id.* at 31.) However, the sentencing court did consider Petitioner's statement, but ultimately concluded that "[w]ords alone are not enough here." *Bigica*, No. 12-cr-318, at 14. In reaching this conclusion, the sentencing court relied in part on Comment 3 to Section 3E1.1(a) of the United States Sentencing Guidelines, which provides that "evidence [consisting of a guilty plea along with truthfully admitting the conduct of the offense] may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility." *Id.* at 13.

about the good points about [Petitioner], which I think you've done a great job in portraying." *Id.* 44:2-5. Based on the record, this Court cannot conclude counsel's performance was in any way unreasonable.

The additional points raised by Petitioner are of no consequence. As discussed above, the sentencing court rested its decision with respect to Petitioner's acceptance of responsibility on his post-plea conduct—specifically, his failure to comply completely and honestly with the Probation Office and his failure to pay any restitution after his plea despite reporting an income in excess of $800,000 the previous year. In addition to the examples already cited, the sentencing court stated:

> THE COURT: But there's been six months from [the plea] and nothing [paid in restitution], with an eight to $900,000 income, and that's the its [sic] concern I have. I think I've been very up front about saying it.

Sentencing Transcript 52:13-19.

> In addition, while Defendant stated in his plea agreement his intention to make 'full restitution,' he failed to pay anything toward restitution during the long interval between the plea and sentencing, despite earning nearly $1,000,000.00 in 2011 and more than $40,000.00 per month for each of the first six months of 2012.

*Bigica*, No. 12-cr-318, at 14.

> The most succinct way to describe Defendant's behavior subsequent to the entry of his guilty plea is that he continued to engage in the same sort of deceptive behavior that resulted in the conviction on both counts in this case. This is not what "acceptance of responsibility" means.

*Id.* at 19; *see also*, Sentencing Transcript 23:4-9; 24:1-20; 26:6-13; 27:22-25; 28:1-13; 30:1-15; 80:14—81:14; 92:2-12. Because the sentencing court was concerned with Petitioner's post-plea conduct, had counsel argued that Petitioner made payments to the IRS prior to his plea, those arguments would have served only to highlight Petitioner's failure to make any restitution payments after his plea—a fact which Petitioner was unable to, and still does not, deny. In

addition, the record was clear with respect to the Government's and Probation Office's positions on Petitioner's acceptance of responsibility and these points did not need reiteration.[11] In sum, none of the arguments Petitioner raises here speak to the post-plea conduct upon which the sentencing court focused and relied. Counsel therefore did not render objectively unreasonable performance with respect to these points and, even if he had, Petitioner has not shown that he would have received the three-point reduction for acceptance of responsibility but for counsel's representation. Accordingly, Petitioner's claim that his trial counsel rendered ineffective assistance on the issue of Petitioner's acceptance of responsibility will be denied.

## B. Appellate Counsel's Representation on Appeal

Petitioner argues that his appellate counsel was ineffective "for failing to . . . include [Petitioner's Rule 32 argument] in the direct appeal, while making the obviously erroneous argument that Rule 32 required the sentencing judge to hold an evidentiary hearing separate from the sentencing hearing to resolve the controverted PSR issues of 'fact.'" (Mot. Br. at 28.) Petitioner further argues that appellate counsel was ineffective for failing to "challenge in the direct appeal for the sentencing court's refusal to grant petitioner the three-point total reduction that was a part of his plea agreement." (*Id.*) For similar reasons as those expressed above, these claims are without merit.

---

[11] Indeed, when the Government stated its stipulation to the three-point reduction for acceptance of responsibility, the sentencing court stated:

> THE COURT: Well, you said he gets it, the plea agreement says he gets it if he demonstrates acceptance of responsibility between the time of the plea and the time of the sentencing. Your memo didn't address that at all. But that's a court responsibility and, therefore, I have looked at that. But it's an "if," it's not automatic, it's an "if."

Sentencing Transcript 55:7-13.

First, Petitioner argues that appellate counsel should have raised the Rule 32 argument in his direct appeal. For the reasons discussed above with respect to trial counsel, appellate counsel did not render objectively unreasonable representation for not raising these matters on appeal and Petitioner has not shown prejudice resulting from appellate counsel's representation. Again, the majority of the issues Petitioner raises in his Motion either were resolved by the sentencing court, explicitly deemed not to warrant resolution, or not relied upon as a basis for Petitioner's sentence. As is the case with respect to trial counsel, appellate counsel cannot be said to have acted unreasonably by not arguing on appeal that the sentencing court should have resolved issues that it did resolve or make determinations that it did in fact make.[12] In addition, Petitioner offers no argument whatsoever regarding how appellate counsel's representation on these matters prejudiced his appeal in any way. Petitioner therefore has failed to satisfy the requirements of *Strickland* and this claim will be denied.

Similarly, Petitioner has not satisfied the *Strickland* standard for his claim that appellate counsel should have challenged the sentencing court's decision not to afford him the three-point reduction for acceptance of responsibility. On appeal, "[b]ecause the sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility, [the Court of Appeals] give[s] great deference on review to a sentencing judge's decision not to apply the two-level reduction for acceptance of responsibility to a particular defendant." *United States v. Barr*, 963 F.2d 641, 657 (3d Cir. 1992) (internal quotations and citations omitted). A sentencing court's determination whether a defendant is entitled to a reduction for acceptance of responsibility is

---

[12] As mentioned above, the Court of Appeals concluded that the sentencing court complied with the requirements of Rule 32, specifically, at least, while considering his claims regarding the allegations of his non-compliance with Probation with respect to his financial status. *See* n.7, *supra*.

reviewed for clear error. *United States v. Harris*, 751 F.3d 123, 126 (3d Cir. 2014) (citing *United States v. Ceccarani*, 98 F.3d 126, 129 (3d Cir.1996)). Petitioner offers no argument as to how appellate counsel could or would have overcome this standard on appeal and, again, no substantive arguments regarding prejudice.

Indeed, the Court of Appeals touched on the sentencing court's consideration of Petitioner's acceptance of responsibility and Petitioner's inability to respond to the court's concerns:

> Moreover, at the sentencing hearing, the Court specifically asked [Petitioner] to present his case as to why the PSR was not correct *and why he should receive an acceptance of responsibility reduction*. Tellingly, [Petitioner] fails to address in meaningful fashion the following statement from the Court:
>
>> Here, the conduct of the defendant post plea that has been of concern to the Court, and which I have amply given the defendant and his counsel time and the opportunity to address, is first and foremost the compliance with the request of the United States Probation Office and recognition and honoring the promise made at the plea agreement of full restitution. The presentence report is replete with multiple examples that go far beyond any claim of mistake or error in judgment or an excusable neglect in not supplying complete and accurate information in his initial personal financial statements to the [P]robation [O]ffice.
>
> (App. at 202.) The Court thus considered [Petitioner's] contested facts and decided not to draw the inferences he wished from those facts. . . . There was no error in the sentencing procedure.

*Bigica*, 543 F. App'x at 244 (emphasis added). As discussed above, Petitioner has not disputed that he did not pay restitution after entering his plea or that documents he provided to the Probation Office were incomplete, including his failure to submit his 2011 tax return until the sentencing court ordered him to do so. Given the high standard of review on appeal, the lack of substantive argument by Petitioner, and the Court of Appeal's brief consideration of the matter, Petitioner has not shown that the outcome of his appeal would have been different but for

appellate counsel's declining to challenge the sentencing court's decision not to afford him an acceptance of responsibility reduction. Petitioner's claims that his appellate counsel rendered ineffective assistance will be denied.[13]

### C. Certificate of Appealability

Petitioner has not made a substantial showing of the denial of a constitutional right. Therefore, no certificate of appealability will issue pursuant to 28 U.S.C. § 2253(c)(1)(B). *See* Fed. R. App. P. 22(b)(1); 3d Cir. L.A.R. 22.2.

### IV.  **CONCLUSION**

For the reasons set forth in this Opinion, Petitioner's motion is dismissed and the Court denies a certificate of appealability.  An appropriate Order follows.

Madeline Cox Arleo, U.S.D.J.

Date: Sept 19, 2017

_____

[13] In its Response, the Government responds to claims that Petitioner's appellate counsel was also ineffective for not seeking *en banc* review by the Third Circuit and for not challenging the propriety of the sixty-month sentence. (ECF No. 12 at 21.) The Court does not read Petitioner's motion as raising these claims and therefore does not address them. Petitioner mentions in the background section of his motion that "[*Petitioner*] declined to attempt to move the Third Circuit Appeals Court three-judge panel to reconsider its ruling, or to have them convene the Appeals Court *en banc* for that purpose." (Mot. Br. at 10 (emphasis added).) Petitioner also states in the background section, "For some inexplicable reason, appellate counsel did not challenge the propriety of petitioner's sixty-month sentence, though he did argue that the two counts should have been "grouped" for purposes of sentencing . . . ." (*Id.* at 9.) Petitioner makes no arguments regarding these points, however, and does not address them along with his other arguments concerning the effectiveness of appellate counsel. *See* Mot. Br. at 28. As such, even if Petitioner's intention was to raise these points as grounds for relief, he has not met the standards of *Strickland* because he has not offered any argument as to why appellate counsel's representation was objectively unreasonable for not pursuing these challenges or how Petitioner was prejudiced because of it.

26